471 P.2d 39

**NANCY LEE MINES, INC., an Idaho corporation, Plaintiff-Respondent,**

**v.**

**William C. HARRISON, P. W. Harrison, Grace G. Harrison and Equity Metals, Inc., an Idaho corporation, Defendants-Appellants.**

No. 10335.

Supreme Court of Idaho.

June 17, 1970.

James F. Judd, Post Falls, H. S. Sanderson, Coeur d'Alene, William C. Harrison, Spokane, Wash., for defendants-appellants.

William A. Reagan, Coeur d'Alene, for plaintiff-respondent.

DONALDSON, Justice.

Nancy Lee Mines, Inc. (plaintiff-respondent) instituted an action in mandamus to require William C. Harrison, P. W. Harrison, Grace G. Harrison and Equity Metals, Inc. (defendants-appellants) to return to Nancy Lee Mines corporate books and records which were presently in the custody of defendants-appellants. In April, 1966, William C. Harrison was appointed as legal counsel and general manager for Nancy Lee Mines, Inc. In addition to his duties for the Nancy Lee Corporation, William C. Harrison served also as manager and legal counsel for Equity Metals, Inc., a service corporation, created for the purpose of keeping the books and records for Nancy Lee Mines and for various other mining companies. P. W. Harrison, wife of William C. Harrison, is a director of Nancy Lee Mines, Inc., and president of Equity Metals, Inc. Grace G. Harrison is the sole owner of all of the stock of Equity Metals, Inc. On May 18, 1968, the Board of Directors of Nancy Lee Mines terminated the services of both William C. Harrison (as legal counsel and general manager) and Equity Metals, Inc. (as bookkeeping and service corporation for Nancy Lee Mines, Inc.). At that time, William C. Harrison served a Notice of Claim of Lien upon Nancy Lee Mines wherein he stated that there was owing to him as legal and managerial fees the sum of $30,000 and $2,000 in expenses. However at the May 18, Director's Meeting, it was agreed between Nancy Lee Mines and Equity Metals, Inc. that the officers of Equity Metals would turn over immediately to Nancy Lee Mines, Inc. the corporate books necessary to conduct corporate business and, within ninety days, Equity Metals was to deliver to Nancy Lee Mines the remainder of the books and records belonging to Nancy Lee Mines.

Upon Equity Metals' failure to deliver and turn over Nancy Lee Mines' corporate books and records, this action was commenced by Nancy Lee Mines in district court for a peremptory writ of mandate directing appellants to turn over to it all books, papers, and records belonging to Nancy Lee Mines and asking that William C. Harrison's lien be declared null and void.

Subsequent to a hearing on the motion for writ of mandate, the district court issued the peremptory writ of mandate requiring the defendants-appellants, Equity Metals, William C. Harrison, P. W. Harrison, and Grace G. Harrison, to turn over to the secretary of Nancy Lee Mines, Inc., all books, papers, records, and personal property belonging to Nancy Lee Mines, because in the opinion of the district court:

"Under all the circumstances in this case, it was apparent to the court that the lien claim was only for the purpose of frustrating the remainder of the directors in the operation of the corporate business to the detriment of the corporation."

The defendants, Equity Metals, Inc., William C. Harrison, P. W. Harrison, and Grace G. Harrison, have appealed to the Supreme Court from the order of the district court, granting the peremptory writ of mandate.

Appellants (defendants) contend that the trial court erred by granting the peremptory writ of mandate since they maintain that mandamus will issue only where there is no adequate remedy by which relief can be obtained in the ordinary course of law.[1] This Court has recently considered the propriety of an action in mandamus to secure the return of corporate books and records which have been unjustly retained by a former employee of a corporation in Silver Bowl, Inc., et al. v. Equity Metals, Inc. and William C. Harrison, 93 Idaho 487, 464 P.2d 926 (1970) and has endorsed the holding announced by the Oregon Supreme Court in Hunt v. Ketell, 197 Or. 659, 253 P.2d 272 (1953).[2]

"We think that the remedy of replevin is neither sufficiently speedy nor adequate to achieve the results sought by invoking mandamus in aid of a matter of this kind." Hunt v. Ketell, *supra*, at 666, 253 P.2d at 275.

This is so because,

"* * * the defendant in a replevin action may post a redelivery bond and retain possession of the property in question. * * * Such a result might well defeat the corporation in the furtherance of the business for which it was organized." Id. at 666, 253 P.2d at 275.[3]

---

1. I.C. § 7–303 states: "Absence of adequate remedy.—The writ [of mandamus] must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course, of law. It must be issued upon affidavit, on the application of the party beneficially interested."

   Defendants-Appellants (William C. Harrison, P. W. Harrison, Grace G. Harrison, and Equity Metals, Inc.) contend that Nancy Lee Mines, Inc. had an adequate remedy in the ordinary course of law by instituting suit pursuant to I.C. § 8–301 et seq. (statutory replevin; claim and delivery of personal property).

2. See also, 18 Am.Jur.2d Corporations, § 176, p. 705; Annot. 93 A.L.R. 1061; 5 Fletcher Cyclopedia Corporations, §§ 2194, 2382 (perm. ed. rev. repl. 1967).

3. Pursuant to I.C. § 8–306, the defendants-appellants (Harrison, Equity Metals, et al.) would have been entitled to post a redelivery bond and retain possession of the records even though the plaintiff-respondent (Nancy Lee Mines, Inc.) had initiated a claim and delivery action.

   "8–306. Redelivery to defendant—Undertaking.—At any time before the delivery of the property to the plaintiff, the defendant may, if he do not except to the sureties of the plaintiff, require the return thereof, upon giving to the sheriff a written undertaking, executed by two or more sufficient sureties, to the effect that they are bound in double the value of the property, as stated in the affidavit of the plaintiff, for the delivery thereof to the plaintiff, if such delivery be adjudged, and for the payment to him of such sum

Furthermore the early case of Beard v. Beard, 66 Or. 512, 133 P. 797 (1913) specifically states that mandamus is a proper remedy in a case where return of corporate records is sought.

"It is contended by the defendant that the plaintiff has a plain, speedy, and adequate remedy at law by an action for possession of the personal property. High, Extraordinary Remedies, § 306, states: 'And the rule is well established, both upon principle and authority, that mandamus will lie to compel the surrender and delivery of corporate books and records to the officers properly entitled thereto. And where the term of office has expired, either by removal, or by lapse of time, and the officer refuses to surrender the corporate records and documents to his successor duly elected and entitled to their custody and control, mandamus will go to compel the delivery.' See, also, Cook on Corporations, § 515." Beard v. Beard, *supra*, at 518, 133 P. at 800.

We therefore again hold that an action in mandamus is the proper procedure in a matter of this kind to obtain the return of corporate books and records.

Appellants also maintain that it was error for the trial court to base its memorandum decision (explaining the reasons for its issuance of the peremptory writ of mandamus) on the fact that "William C. Harrison refused to differentiate between the amount due him for legal services and the amount due as general manager" when the trial court expressly stated during the course of the trial that:

"As far as the amount of attorney's fees is concerned, I think that could well be separated as a matter of another hearing either by way of a reference to make the account of it to the court. I would be inclined to say a reference because think it would take a great deal of time and involve a long account. As I understand there has been an attorney/client relationship for possibly some two years, but I think that matter could be resolved as a separate matter."

█ If any error was committed by the trial court by implying that the separation of legal fees from managerial fees would be the subject of a separate hearing and then expressly using Harrison's refusal "to differentiate between the amount due him for legal services and the amount due as general manager" as a reason for granting the peremptory writ of mandate, it was immaterial since it is evident that Harrison never actually possessed a valid attorney's lien on the items in question. William C. Harrison claims that he is entitled to the possession of the corporate records and books under the theory of an attorney's "common law general retaining or possessory lien" on the papers and documents in his possession, but belonging to his client, since he has not been paid.[4] However,

---

as may, for any cause, be recovered against the defendant. If a return of the property be not so required within five days after the taking and service of notice to the defendant, it must be delivered to the plaintiff, except as provided in section 8–311."

4. The early case of Curtis v. Richards, 4 Idaho 434, 40 P. 57 (1895) recognized the existence of the possessory lien of an attorney on his client's papers. The possessory or retaining lien (of common law origin) is to be distiguished from the statutory lien created by I.C. § 3–205. But I.C. § 3–205 merely codifies the "charging lien" (also known at common law) held by an attorney on his client's judgment or verdict.

"3–205. Attorneys' fees—Lien.—The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in this client's favor and the proceeds thereof in whosoever hands they may come; and can not be affected by any settlement between the parties before or after judgment."

"A retaining lien is the right of the attorney to retain possession of a client's

"* * * in order to the creation of the lien, the papers must not only have come into the actual possession of the attorney, *but they must have so come into his possession in his character as an attorney at law.* Thus he [the attorney] has no lien on papers which he receives as * * * a mortgagee * * * or trustee [or manager of a corporation]." 2 Mechem on Agency § 2267, pp. 1841–1842; See also J. T. Thomson v. Findlater Hardware Co., 109 Tex. 235, 205 S. W. 831 (1918). (Emphasis supplied).

In this case the Notice of Claim of Lien fails to differentiate between the sum claimed by Harrison in his capacity as an attorney and his capacity as manager. Since Harrison attempted to use the "attorney's lien" for purposes not contemplated by the device, i. e., recovery of compensation for managerial services unrelated to the legal services performed by him, no valid attorney's lien was ever created. The vague statements and claims made by Harrison are insufficient to constitute an attorney's possessory or retaining lien. Furthermore, the appellant, William C. Harrison, attempted to claim a lien on property obviously not in his possession by virtue of an attorney-client relationship with Nancy Lee Mines, Inc., but only because he was the attorney and general manager for Equity Metals, Inc., which had the actual possession of the books and records of Nancy Lee Mines, Inc. The second requirement set forth by Mechem, viz., "they must have so come into his possession in his character as an attorney at law" is not satisfied by the factual situation in the case at bar.

Judgment affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, SHEPARD, and SPEAR, JJ., concur.

documents, money, or other property which comes into the hands of the attorney professionally, until a general balance due him for professional services is paid." 7 C.J.S. Attorney and Client § 210.

"A charging lien is the equitable right of an attorney to have fees and costs due

him for services in a particular suit secured by the judgment or recovery in such suit, is based on equitable considerations, and differs from ordinary liens in that possession is not essential to the charging lien." 7 C.J.S. Attorney and Client § 211.